## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALVIN WILSON,** | : | **Case No. 3:12-cv-1581 (VLB)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BROOKE McKENNA, et al.,** | : | |
| **Defendants.** | : | **MARCH 31, 2015** |

### RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #18] AND PLAINTIFF'S MOTION TO AMEND AMENDED COMPLAINT [Doc. #21] AND INITIAL REVIEW ORDER AS TO CERTAIN CLAIMS

The plaintiff, incarcerated and pro se, commenced this case with a complaint filed November 8, 2012, in which plaintiff asserted three unrelated claims under 42 U.S.C. § 1983.  The only defendant identified by name in plaintiff's initial complaint was Brooke McKenna,[1] who was named in the first count.  All of the other defendants named in plaintiff's initial complaint were identified as John Doe or Jane Doe. On August 30, 2013, the court entered an Initial Review Order (the "IRO") in which the court allowed plaintiff to proceed on the first count in the initial complaint and ordered the complaint served on defendant McKenna, while declining to rule on the second and third counts until plaintiff identified by name the defendants named in those counts.  The court stated that it would review the viability of the second and third claims once the plaintiff had identified persons associated with those claims.

---

[1] Although plaintiff named defendant as "Jane McKenna," defendant represents that her name is actually "Brooke McKenna," a claim that plaintiff does not rebut.  The court will thus refer to her as Brooke McKenna.

The plaintiff filed his amended complaint on February 27, 2014. In his amended complaint plaintiff reasserts the three claims raised in his initial complaint and for which he named John Doe defendants in the initial complaint, and also adds additional claims, which will be discussed in greater detail below. In response, defendant Brooke McKenna has filed a motion to dismiss. The plaintiff opposes the motion to dismiss and has filed a motion for leave to further amend the complaint. The court will conduct below an initial review of claims two and three of the initial complaint as renewed in the amended complaint, as well as the claims newly asserted in the amended complaint. For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion to amend is denied. Further, several of plaintiff's claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## I. FACTS

Plaintiff's amended complaint is handwritten, discursive, and very difficult to decipher.[2] Although plaintiff appears to divide his amended complaint into four counts, certain of the counts describe seemingly unrelated incidents, and there is overlap between the factual allegations in certain of the counts. In the interest of clarity, the court will organize this opinion around the various incidents described, rather than the "counts" as laid out by plaintiff. As best as the court can determine, the plaintiff alleges the following facts.

## A. July 18, 2011 Hand Injury at Hartford Superior Court

On July 18, 2011, the plaintiff was a pretrial detainee in the care of the

---

[2] This observation also applies to plaintiff's initial complaint.

Connecticut Judicial Marshals at the Hartford Superior Court.  When he approached

the cell door, while walking in leg restraints, he slipped on something wet on the

floor.  At the same time, a state judicial marshal opened the cell door and closed it

on his hand.  It is unclear from the amended complaint whether plaintiff suffered any

injuries from the fall.  Plaintiff alleges the closing of the door on his hand was a

deliberate act, done because the state judicial marshals "do not like [him]."  Am.

Compl. at 11.[3]  The plaintiff was taken to Hartford Hospital by ambulance, and

alleges that the doctor failed to provide proper treatment to his hand.  Plaintiff does

not state what type of claim he alleges in regard to this incident.  The only defendant

named in this count is the State of Connecticut.

## B. June 2012 Failure to Renew Prescriptions

On June 22, 2012, the plaintiff was a pretrial detainee at Hartford Correctional

Center.  Plaintiff was apparently prescribed pain medication for injuries to his head,

face, mouth, teeth, neck, shoulders, back, leg, hand, knees, and feet, allegedly

caused by Hartford police officers during an arrest on June 21, 2012.  After six days,

Drs. Laplante and Pillai refused to renew the prescriptions or provide any other

medical treatment, allegedly because they "do not like [him]."  Am. Compl. at 10.

Plaintiff alleges that he was "dieing suffering from all the pain from the untreated

injuries I receive on 6-21-2012." Am. Compl. at 10.  Plaintiff claims that Drs. Laplante

and Pillai violated his Eighth Amendment rights, as well as rights under other

unspecified amendments.

## C. June/July 2012 Confinement in Windowless Cell

_____

[3] Because plaintiff's pagination is inconsistent, the court refers to the page

3

From on or around June 22, 2012, until July 25, 2012, plaintiff alleges he was housed alone in a windowless cell and could not tell whether it was day or night at any time.  Plaintiff asserts that he was suffering greatly from the pain caused by his untreated injuries at this time.  The plaintiff attributes this confinement to defendant Warden Ford.  Plaintiff claims that Warden Ford violated his Eighth Amendment rights, as well as rights under other unspecified amendments.

### D. September 17, 2012 Finger Injuries

This is the claim the court allowed to go forward against defendant McKenna in the IRO.  As realleged in the amended complaint, the following defendants are named in this claim: McKenna, Warden Erfe, Dr. Farinella, and Dr. Gillig. On September 17, 2012, while the plaintiff was confined at Corrigan-Radgowski Correctional Center ("Corrigan"), defendant McKenna closed the cell door on his fingers, cutting them to the bone.  She refused to give plaintiff any medical assistance, and also refused to call for emergency medical assistance, telling plaintiff to sign up for sick call.  The plaintiff alleges that defendant McKenna then contacted the defendant doctors, Dr. Farinella and Dr. Gillig, and told them not to call the plaintiff for sick call.  The doctors did not treat plaintiff's injury or summon him for sick call.  Plaintiff further alleges that as a result of the lack of treatment, his fingers are now deformed and he is handicapped.  Plaintiff also alleges that Warden Erfe worked with McKenna to prevent the doctors from treating plaintiff's injuries, and to cover up the incident. On September 20, 2012 plaintiff filed a grievance regarding this incident, in which plaintiff complained about not being seen for sick

numbering provided in the document's ECF header.

call for treatment for the injuries to his fingers.

**E.  March 28, 2013 Assault**

The following allegations were not included in plaintiff's initial complaint, and were first asserted in the amended complaint now before the court. Plaintiff alleges that he was assaulted at Corrigan on March 28, 2013 in retaliation for filing a grievance against defendant McKenna.  Plaintiff alleges that Lieutenant Aver and Correctional Officer Wayen gave plaintiff false disciplinary reports, and encouraged other correctional officers to do the same, so that they could put plaintiff in segregation and assault him.  Plaintiff alleges that on March 28, 2013, while in segregation, defendants Lieutenant Aver, Lieutenant William, Correctional Officer Wayen, Correctional Officer McKenna, and Warden Erfe conspired to have Correctional Officer Hanney, and a John Doe Lieutenant assault plaintiff.  Plaintiff alleges that Hanney and John Doe came to plaintiff's cell, handcuffed him, and took him to segregation.  Once in segregation, they assaulted plaintiff, pushing his face into the cell door and window head-first.  Plaintiff also alleges that Correctional Officer Hanney sexually assaulted plaintiff while plaintiff was being held in handcuffs by the John Doe defendant. Plaintiff writes "review tap, on 03-28-2013 at C.R.C.C. in segregation, I think about 6:30 PM 118-cell," which the court interprets as a claim that there exists surveillance tape of the incident.  Plaintiff asserts that defendants violated plaintiff's civil rights although the specific statute under which plaintiff appears to be bringing a claim is not visible in the document.

It is not clear from plaintiff's complaint, but he may also be alleging that defendants Aver and Wayen were retaliating against plaintiff for grievances he had

earlier lodged against them, although this portion of the complaint is particularly unclear.  If plaintiff is in fact making such an allegation, plaintiff has not provided the date he made a grievance against Aver and/or Wayen.

### F. April 2013 Transfer to MacDougall-Walker Correctional Institution

Plaintiff also alleges for the first time in his amended complaint that he was in segregation at Corrigan from the date of the alleged assault, March 28, 2013, until April 21, 2013, when he was transferred to the MacDougall-Walker Correctional Institution ("MacDougall-Walker").  Plaintiff alleges that he was transferred in order to prevent plaintiff from getting the names of the staff members involved in the incident on March 28, 2013.  Plaintiff alleges that the staff members at Corrigan sent a copy of the grievance in his file to the staff members at MacDougall-Walker, and as a result the staff members at MacDougall-Walker began abusing him. Plaintiff argues that he was held in segregation for ten days longer than he should have been, without reason, before being released to general population.  Plaintiff asserts that the staff at MacDougall-Walker continue to harass him, including by issuing him false disciplinary reports, in retaliation for his having filed legal actions against Department of Corrections staff members, and because they "do not like [him]." Am. Compl. at 12.  Plaintiff does not state what type of claim he alleges in regard to these facts. Plaintiff names the following individuals as defendants in the text of this claim: Warden Peter Murphy, Captain Van Ouden, District Administrator Angel Quiros, Investigator Demarch, Counselor Arace, Correctional Officer Joyal, Correctional Officer Reyes, Correctional Officer Barens, and Lieutenant Mahony.

### II. STANDARDS OF REVIEW

The only claim in the amended complaint that has been the subject of an initial review order is plaintiff's claim against defendant McKenna arising from the September 17, 2012 hand injuries.  The court will thus conduct an initial review of the other claims in the amended complaint.  The court will also conduct an initial review of the claim arising form the September 17, 2012 hand injuries as to defendants Dr. Farinella, Dr. Gillig, and Warden Erfe, as those defendants were added in the amended complaint.  Finally, the court will also consider defendants' pending motion to dismiss.

## A. Initial Review Standard

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

## B. Motion to Dismiss Standard

The pleading standard in federal court is well settled law. "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). In the interest of brevity, the court will refer to the plausibility standard described above in the section above, Part II.A.

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an

entitlement to relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal quotations and citation omitted).

## III. DISCUSSION

The defendants move to dismiss on several grounds, including: improper joinder, insufficient service of process, failure to state a cognizable claim, and qualified immunity.  Although he has filed an objection to the motion to dismiss and a supporting memorandum, the plaintiff's objection is inscrutable and fails to address any of the defendants' grounds for relief. Although only defendant McKenna has been served, as she was the only defendant identified by name in the initial complaint, the motion to dismiss is apparently filed on behalf of all defendants named in plaintiff's amended complaint.

The court will first address issues that affect multiple claims in the amended complaint, and then consider the individual claims.

## A. Exhaustion

The court notes that it is not clear from the face of plaintiff's amended complaint whether he has exhausted his claims as required by the Prison Litigation Reform Act (the "PLRA").  In regards to his claim arising from the September 17, 2012 hand injury, plaintiff states that "plaintiff, A.W. filed grievance, on 9-20-2012 because he was not seen for sick call for his serious cuts to his figers, . . ." Am. Compl. at 9.  The court cannot discern any allegations with

9

regard to exhaustion in any of plaintiff's other claims. The PLRA contains a strict administrative exhaustion requirement for conditions of confinement litigation: "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The Second Circuit has established a three-part inquiry to determine whether an inmate has satisfied the exhaustion requirement of § 1997e(a).  The exhaustion inquiry involves the following questions:

> [1] a determination that administrative remedies were in fact available to the prisoner[;] . . . [2] whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' own actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the exhaustion defense[;] . . . [3] whether, if the requirements of step two were not met, special circumstances excuse the plaintiff's failure to pursue or exhaust administrative remedies.

*Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

The Connecticut Department of Corrections affords inmates a three level grievance process. *See* Conn. Dep't of Corr. Admin. Dir. 9.6(6), *available at* http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf (last visited Mar. 24, 2015).

10

Although it is not clear from plaintiff's amended complaint whether he has satisfied the exhaustion requirement, the Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  **Jones**, 549 U.S. at 216. Defendants bear the burden of proving that plaintiff failed to exhaust his claims. **See, e.g., Key v. Toussaint**, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). Defendants have raised exhaustion as an affirmative defense in their answer, but have not raised it in their motion to dismiss, nor borne their burden of proof to demonstrate a failure to exhaust, and thus the court will not consider exhaustion at this time.

## B. No Claims Against State of Connecticut or Official Capacity Defendants

Defendants correctly argue that any claims for damages against them in their official capacities or against the State of Connecticut are barred. The Eleventh Amendment protects the states from suit and protects state actors from an award of damages against the individual in his official capacity.  **See Kentucky v. Graham,** 473 U.S. 159, 169 (1985) (holding that, absent waiver by the state or valid congressional override, the Eleventh Amendment bars a damages action in federal court against a state or state official in his official capacity).  Section 1983 does not abrogate states' sovereign immunity.  **See Quern v. Jordan,** 440 U.S. 332, 342-43 (1979).  Thus, the plaintiff cannot recover damages from the State of Connecticut or the defendants in their official capacities.  The defendants' motion to dismiss is granted as to all claims for damages against the State of

11

Connecticut and the defendants in their official capacities.

## C. Improper Joinder

Defendants argue plaintiff has improperly joined parties in violation of Rule 20 of the Federal Rules of Civil Procedure.  Defendants argue that there is "no nexus" between the various defendants and the different claims advanced by the plaintiff. Def. Mem. at 5-7.

Federal Rule of Civil Procedure 20(a)(2)(A) provides that persons may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

The plaintiff has improperly joined unrelated defendants in this case.  "In the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009)). When evaluating whether the claims or parties are properly joined under Rule 20(a), the court must accept as true all factual allegations in the plaintiff's complaint. *Deskovic*, 673 F. Supp. 2d at 159-60 (citing *Viada v. Osaka Health Spa*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006)). Plaintiff bears the burden of proving that joinder is proper. *Id.* at 159 (citing *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008)).

12

Once the court has determined that the parties are improperly joined, it has broad discretion to sever parties or claims from the action. *See, e.g., New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988); *Bank of N.Y. Mellon v. Bell*, No. 3:11-cv-1255, 2015 U.S. Dist. LEXIS 22063, at *5 (D. Conn. Feb. 24, 2015) (citation omitted); *Deskovic*, 673 F. Supp. 2d at 159-60 (citing Fed. R. Civ. P. 21).

Although plaintiff brings several factually unrelated claims, naming different defendants in each claim, the court need not order severance here, as plaintiff has failed to adequately allege all but one of his claims.  However, to the extent that plaintiff may replead any of the dismissed claims, any claim that is re-filed must be the subject of its own separate lawsuit, unless plaintiff can show why the claims and/or defendants should be joined. *See* Fed. R. Civ. P. 21.

## D. Insufficient Service of Process

The defendants contend that service has not been properly effected on John Doe Corrigan-R-CC, John Doe Warden HCC, John Doe Corrigan –R-CC, Jane Doe HCC, Jane Does Doe Corrigan R-CC, John Aver, John Wayen and John Williams.  The defendants argue that the claims must be dismissed because service was not effected within 120 days as required under Rule 4(m) of the Federal Rules of Civil Procedure. Defendants' argument is unpersuasive because the court has not yet ordered service on those defendants. Federal statutes require that the court effect service of a complaint where the plaintiff has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(d), and that the court review a prisoner complaint and dismiss any frivolous or noncognizable

13

claims, 28 U.S.C. § 1915A(a)-(b). The U.S. Marshal will not attempt to serve the complaint on any defendant until the court reviews the merits of the allegations against that defendant and determines that the case should proceed against him or her.

As the court stated in its August 30, 2013 IRO, the court cannot effect service on any of the John or Jane Doe defendants without their full names and current work addresses. IRO at 5. The court gave plaintiff twenty (20) days from the date of the IRO to file an amended complaint containing the full names and current work addresses of the John and Jane Doe defendants, and notified plaintiff that failure to comply with the order could result in the dismissal of all claims against the John and Jane Doe defendants without further notice from the court. IRO at 5. After receiving a lengthy extension of time, the plaintiff filed the amended complaint at issue here. The amended complaint names several specific individual defendants, and does not name any John or Jane Does in the case caption or description of the parties. Rule 10 of the Federal Rules of Civil Procedure requires that a plaintiff name all parties in the caption. Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."). Because the John and Jane Doe defendants are not named in the caption, they are not considered defendants in this action. *See, e.g., Damato v. Johnson*, No. 3:14-cv-1953, 2015 U.S. Dist. LEXIS 22418, at *1 n.1

14

(D. Conn. Feb. 25, 2015) ("persons . . . who are listed in the body of the complaint but not in the caption are not considered defendants in this case."). The court concludes that the John and Jane Doe defendants named in plaintiff's initial complaint are either the defendants identified in the amended complaint, or plaintiff has abandoned his claims against the John and Jane Doe defendants he cannot identify. The clerk is directed to terminate the John and Jane Doe defendants from the docket.

As no order for service has yet issued as to defendants Aver, Wayen, or Williams, the defendants' motion to dismiss for lack of proper service is denied as premature.  Further, this motion is moot, as the court is dismissing the claims against defendants Aver, Wayen, and Williams for failure to state a claim, *see infra* Part III.I.

### E. Claims Arising From July 18, 2011 Hand Injury at Hartford Superior Court

Plaintiff names only the State of Connecticut as a defendant in this claim. As noted above, *supra* Part III.B, the Eleventh Amendment gives the State of Connecticut immunity from suit in this action.  This claim is thus dismissed without prejudice to the plaintiff re-filing the claim with specific individual defendants named. However, plaintiff may not re-allege this claim in this lawsuit; if plaintiff wishes to re-file this claim, it must be filed as a separate lawsuit, as there is no factual nexus between this claim and the other claims in this action. See *supra* Part III.C. The Clerk is directed to terminate the State of Connecticut as a defendant in this action.

15

**F. Claims Arising From June 2012 Failure to Renew Prescriptions**

Although plaintiff does not specify what type of claim he is bringing, the court assumes that plaintiff's claim is one for deliberate indifference to a serious medical need, as plaintiff alleges defendants Drs. Laplante and Pillai failed to renew his prescriptions for injuries he received when arrested on June 21, 2012.

The defendants argue that the plaintiff's deliberate indifference claims must be dismissed because they consist only of conclusory allegations.  To state a claim for deliberate indifference to a serious medical need, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  There are both subjective and objective components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quotation and citation omitted).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).  A difference of opinion regarding what constitutes an appropriate response and treatment, does not constitute deliberate indifference to a serious

medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  Nor is negligence sufficient to establish deliberate indifference to a serious medical need.  *See Hathaway*, 99 F.3d at 553.

The Second Circuit has advised the court to consider several factors in determining the seriousness of a medical need.  These factors include whether a reasonable doctor or patient would consider the injury important and worthy of comment or treatment, whether the injury affects daily activities and whether the injury produces chronic and substantial pain.  *See Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

The plaintiff alleges in this claim that Drs. Laplante and Pillai would not renew a prescription for pain medication that he had received for injuries he sustained during his arrest by the Hartford Police Department. Plaintiff does not allege that the doctors were aware of his prescription, nor does plaintiff even allege that the doctors knew of his alleged injuries. Although plaintiff states that the doctors refused to renew the prescription because they "do not like [him]" plaintiff does not even allege that he was seen or treated by either of the defendant doctors, nor any facts tending to support his conclusion that they did not like him or denied treatment in reprisal for their dislike of the plaintiff. Even assuming that plaintiff was seen by the defendant doctors and that they knew of his injuries, the allegations in the amended complaint amount to at most a disagreement over treatment, which, as noted above, is not cognizable under section 1983.  The claims against Drs. Laplante and Pillai are thus dismissed

pursuant to 28 U.S.C. § 1915A(b)(1) without prejudice to refiling with sufficient factual allegations. However, if plaintiff wishes to re-assert this claim, he must bring it in a new action, as this claim shares no nexus of fact with the other claims, and Drs. Laplante and Pillai are not named in any of the other claims.

## G. Claims Arising From June/July 2012 Confinement in Windowless Cell

In this claim, the plaintiff also alleges that, while he was a pretrial detainee at the Hartford Correctional Center, he was held in a cell without a window for 33 days at the direction of Warden Ford.  Defendants do not address this claim in their motion to dismiss.  However, conducting an initial review of this claim, the court concludes that the claim should be dismissed. Plaintiff names only Warden Ford in this claim, however, plaintiff's amended complaint contains no facts showing any personal involvement by Warden Ford. Plaintiff does not allege that Warden Ford made the decision to put him in a windowless cell, or even that Warden Ford knew that he was in such a cell. Plaintiff cannot bring a claim against Warden Ford simply by virtue of his status as warden. "A defendant's status as warden or commissioner of a prison, standing alone, is . . . insufficient to establish personal involvement under section 1983." *Khapesi v. City of New York*, No. 13 Civ. 4391, 2014 U.S. Dist. LEXIS 79623, at *15 (S.D.N.Y. June 10, 2014) (quoting *Walker v. Schriro*, No. 11 Civ. 9299, 2013 U.S. Dist. LEXIS 42551, at *51 (S.D.N.Y. Mar. 26, 2013)). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr.*

18

*Srvcs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quotation and citation omitted). Even if Warden Ford was aware of his grievance, this is insufficient in and of itself because plaintiff has failed to allege that he followed the established grievance procedure as required by the PLRA. *See supra* Part III.A, citing http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf. The claim against Warden Ford is dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, without prejudice to re-filing with allegations as to Warden Ford's personal involvement. However, if plaintiff wishes to re-assert this claim, he must bring it in a new action, as this claim shares no nexus of fact with the other claims, and Warden Ford is not named in any of the other claims.

## H. Claims Arising From September 17, 2012 Finger Injuries

### 1. Deliberate indifference To Serious Medical Need

In this claim, the plaintiff alleges that his finger was caught in the cell door and cut to the bone.  Courts within the Second Circuit have held that broken fingers and cut fingers with skin ripped off are not serious medical needs.  *See, e.g.*, *Sonds v. St. Barnabas Hosp. Correctional Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (cut finger with skin ripped off is not a serious medical need); *Henderson v. Doe*, No. 98 Civ. 5011, 1999 U.S. Dist. LEXIS 8672, at *6-7 (S.D.N.Y. June 10, 1999) (mere broken finger is not a sufficiently serious medical need). However, it is also the case that "numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones."  *Vining v. Dep't of Corr.*, No. 12 Civ 3267, 2013 U.S. Dist. LEXIS 136195, at *11-12 (S.D.N.Y.

Apr. 5, 2013) (collecting cases).

The plaintiff alleges that his fingers were cut to the bone and are now deformed.  Upon initial review of the initial complaint, the court determined that these allegations were sufficient to warrant service of the complaint on defendant McKenna.  IRO at 3.  Considering the factors laid out by the Second Circuit, *see supra* Part III.F, the court cannot definitively conclude at this time that the plaintiff did not suffer a serious medical need and that defendant McKenna was not deliberately indifferent to that need by refusing to call emergency medical assistance. The motion to dismiss is denied as to the claim against defendant McKenna.

In the amended complaint, plaintiff has named three additional defendants in this claim: Drs. Farinella and Gillig, and Warden Erfe.  Plaintiff alleges that Drs. Farinella and Gillig failed to call him to sick call and treat his injury, and that Warden Erfe worked with defendant McKenna to persuade Drs. Farinella and Gillig not to treat him.  These claims are conclusory at best, as plaintiff does not allege any facts in support of this alleged conspiracy to deny him treatment. Legal conclusions in a complaint, even when couched as facts, are not presumed true.  These conclusory statements are insufficient to state a claim.  *See, e g., Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" (citation and quotation omitted)).  The defendants' motion to dismiss is granted as to the

claims against defendants Farinella, Gillig and Erfe and the claim against defendant McKenna for persuading medical doctors to not treat the plaintiff, for failure to state a claim.

## 2. Negligence

The defendants move to dismiss all negligence claims plaintiff's amended complaint. Although plaintiff does not explicitly plead negligence anywhere in his complaint, it is possible he could be alleging negligence in regards to defendant McKenna's actions in closing the cell door on his fingers, as he does not allege that McKenna acted intentionally in doing so.  However, even if the court were to read such a claim into the complaint, defendants are correct that negligence is not cognizable under section 1983.  *See Daniels v. Williams*, 474 U.S. 327, 330-33 (1986); *see also Munlyn v. Pietrie*, No. 13-cv-6170FPG, 2014 U.S. Dist. LEXIS 101274, at *19-20 (W.D.N.Y. July 24, 2014) (noting that claims that "allege[] no more than a simple claim of negligence . . . [do] not give rise to a cause of action under § 1983, even if corrections staff had actual or constructive knowledge of the danger") (citing *Daniels*, 474 U.S. 327).  Thus, there is no basis for a federal claim based on negligence.

Additionally, if the plaintiff is attempting to invoke the court's supplemental jurisdiction over a negligence claim based on state law, such claim is precluded by state statute.  Connecticut General Statutes § 4-165(a) provides:

> No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.  Any person having a complaint for such damage or injury shall present it as a claim against the state under

the provisions of this chapter.

Conn. Gen. Stat. § 4-165(a). All of the actions allegedly taken by the defendant were within the scope of their employment, and thus, they are protected from an award of damages against them in their individual capacities by state law.  Any claims against them must be brought to the State of Connecticut's Claims Commissioner. The defendants' motion to dismiss is granted as to any and all negligence claims.

### I. Claims Arising From March 28, 2013 Assault

Prison officials may not retaliate against inmates for exercising their constitutional rights.  To state a retaliation claim, the plaintiff must allege facts showing that "(1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity."  *Friedl v. City of New York*, 210 F.3d 79, 85 (2000) (quotation and citation omitted). "Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff."  *Sioleski v. McGrain*, No. 10-cv-0665S, 2012 U.S. Dist. LEXIS 1236, at *11-12 (W.D.N.Y. Jan. 5, 2012) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  *See, e.g.*, *Flaherty v. Coughlin*, 713 F.2d

10, 13 (2d Cir. 2003).  To support a claim of retaliation, the allegedly retaliatory conduct must "deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  Any lesser conduct is de minimis and does not support a retaliation claim.  Prisoners may be required to tolerate more serious conduct than public employees or private citizens before stating a retaliation claim.  *See, e.g., Ross v. Correct Care Solutions, LLC*, No. 11 Civ. 8542, 2013 U.S. Dist. LEXIS 131306, at *21 (S.D.N.Y. Sept. 13, 2013) (quoting *Davis v. Goord*, 320 F.3d at 353).

The only allegations in the complaint that go to alleged motives of defendants in this claim is the temporal proximity between the filing of his initial complaint and the alleged assault. Plaintiff filed his initial complaint against defendant McKenna on November 8, 2012. The allegedly retaliatory actions took place four months later.  *Cf. Smith v. Da Ros*, 777 F. Supp. 2d 340, 356 (D. Conn. 2011) ("district courts within the Second Circuit consistently have found that lapses of more than two or three months between protected activity and allegedly retaliatory actions do not support inferences of causation." (citations omitted)). This is insufficient temporal proximity to demonstrate improper motivation, and without other allegations of improper motivation, plaintiff has failed to allege a claim of retaliation.

Further, plaintiff's allegation of collusion between Lieutenant Aver, Lieutenant William, Correctional Officer Wayen, Correctional Officer McKenna,

23

Warden Erfe, Correctional Officer Hanney, and a John Doe lieutenant is completely unsupported by any facts. Plaintiff's allegation that Hanney and the John Doe lieutenant were acting at the direction of other defendants is conclusory at best, and is insufficient to support a claim that the assault was done in retaliation for plaintiff's complaint against defendant McKenna. Plaintiff pleads no facts to show any connection between any of these defendants. The claim of retaliation against defendants William, Aver, Wayen, Erfe, Hanney, and McKenna are dismissed for failure to adequately allege a claim.

Plaintiff also alleges that "in the pass, plaintiff A.W. field a complaint befor on L/T Avery and C/o Wayen of Corrigan-R.C.C. for beating plaintiff, head in to the sement floor, busing plaintiff fourhead open, while plaintiff, A.W. was inside the cell in handcuff, giving no problem."  Am. Compl. at 9.  Even reading the complaint in the light most favorable to plaintiff, the court cannot decipher this passage and thus it is not clear from this allegation whether plaintiff is alleging a claim of retaliation against defendants Aver and Wayen. If plaintiff did file a grievance against defendants Aver and Wayen sometime in the past, he does not say when. The claims against Aver and Wayen are dismissed for failure to state a claim. Further, if plaintiff wishes to bring a claim against defendants Aver and Wayen for issuing false disciplinary reports to him, such claims have no connection to the other claims or other defendants, and must be severed.  If plaintiff wishes to re-file the claim, he must file it in a separate lawsuit as they arise out of a separate incident from the first incident of which the Plaintiff

24

complains. Fed. R. Civ. P. 21.

To the extent that the allegations against defendant Hanney regarding the alleged sexual assault could form the basis for an independent claim against defendant Hanney, as it is plead now, that claim does not arise from the same nexus of facts as the other claims in the complaint, and defendant Hanney is not named in any other claims, and thus the claim must be severed.  The claim is dismissed without prejudice to re-filing in a separate lawsuit. Fed. R. Civ. P. 21.

**J. Claims Arising From April 2013 Transfer to MacDougall-Walker Correctional Institution**

Although plaintiff names a number of individuals as defendants in this action in the body of the complaint, he has not named them in the caption of the complaint, and thus they are not parties to this action.  *See supra* Part III.D. Because plaintiff does not allege that any of the named defendants are involved in the claims regarding his treatment at MacDougall-Walker, those claims are dismissed. Further, because these claims involve separate factual allegations, and apparently different defendants, they must be severed, and are dismissed without prejudice to re-filing them in a new lawsuit. Fed. R. Civ. P. 21.

**K. ADA References In Plaintiff's Amended Complaint**

On the front of his amended complaint, plaintiff writes "amended under A.D.A.," which the court assumes to be a reference to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq.  Plaintiff includes the same or similar text in the beginning of each of his claims.  The Court construes the

insertion of this acronym as assertion that each incident violated his rights under the ADA.  These claims are unavailing.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA defines "disability" with respect to an individual as "A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(A)(1).  "The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C § 12102(4)(A).  "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).  The Supreme Court requires that the terms "be interpreted strictly to create a demanding standard for qualifying as disabled."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).  The Court considers a major life activity as one "of central importance to daily life," such as "walking, seeing, and hearing." *Id.* at 197-98.  In addition, the degree of impairment must be significant enough to substantially limit that activity.  *See* 42 U.S.C. § 12102(1)(A).  When analyzing these claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."

*Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted).

In the amended complaint, the plaintiff has not identified any disabling condition or program or service he was denied access to because of a disability, or any constitutional or other right was denied to him because of a condition defined as a disability under the ADA.  The only possible service he could be referring to is medical care or pain medication for his finger injury, which as discussed above, *supra* Part III.H.1, is a claim for deliberate indifference to serious medical need, not an ADA claim. Plaintiff has not alleged that he has been excluded from participation in or be denied the benefits of the Services, programs, or activities of a public entity because of that disability. Thus, he fails to allege any facts to support an ADA claim. Any claim based on the references to the ADA in the amended complaint are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

## L. Qualified Immunity

Defendants argue that even if any of plaintiff's claims are allowed to go forward, defendants are protected by the doctrine of qualified immunity. The only claim going forward is plaintiff's claim for deliberate indifference to a serious medical need arising from the alleged September 17, 2012 injuries to plaintiff's fingers.

Defendant bears the burden of proving the affirmative defense of qualified immunity.  *See, e.g.*, *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (citations

omitted).  To be eligible for qualified immunity, defendant McKenna must prove: "(1) [her] conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the [defendant] to believe [her] conduct did not violate a clearly established constitutional right."  *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).  The right to be free from deliberate indifference to a serious medical need has been clearly-established at least since the Supreme Court's 1976 decision in *Estelle v. Gamble*, 429 U.S. 97 (1976).  *See Rahman v. Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014) (noting that the "right to be free from deliberate indifference to serious medical needs' . . . was clearly established 'as far back as 1976 by [*Estelle*]'" (quoting *Warren v. Keane*, 196 F.3d 330, 333 (2d Cir. 1999))).  Nor do defendants argue that such a right was not clearly established at the relevant time.

The defendants' belief is objectively reasonable if "'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context."  *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendant has failed to carry her burden of establishing qualified immunity, as she does not argue that it was objectively reasonable for her to believe her alleged conduct did not violate a clearly established constitutional right.  Defendant argues that "[q]ualified immunity affords tolerance for mistakes of judgment traceable to faulty information or contextual exigencies, such as those facing defendants, doctors

Farinella, Gillig, LaPlante and Pillai in determining how to treat the plaintiff."  Def. Mem. at 24.  Even assuming that statement is correct, it does not tell the court whether it was objectively reasonable for defendant McKenna to believe her alleged conduct did not violate a clearly established constitutional right, or whether officers of reasonable competence could disagree on the legality of her actions.  The court is thus unable to grant plaintiff's motion to dismiss on the grounds of qualified immunity.

## IV. PLAINTIFF'S MOTION TO AMEND

On May 30, 2014, plaintiff filed a document that was docketed as a motion to amend the complaint.  However, this document, which itself is nearly indecipherable, is not styled as a motion, and there is no memorandum filed in support. What plaintiff has filed appears to be a proposed second amended complaint.  Even if the court were to treat it as a properly filed motion to amend the complaint, the court would not grant the motion.  Although the court should grant leave to amend where justice so requires, Federal Rule of Civil Procedure 15(a)(2), there is an underlying assumption that an amended complaint will clarify or amplify the original cause of action, not add new causes of action.  *See, e.g.*, *Klos v. Haskell*, 835 F. Supp. 710, 715 n.3 (W.D.N.Y. 1993), *aff'd*, 48 F.3d 81 (2d Cir. 1995). The proposed second amended complaint fails to include any new allegation that would alter the court's ruling on the defendants' motion to dismiss or the court's initial review of plaintiff's claims.  Instead, it appears to be reasserting plaintiff's allegation that he has an ADA claim, as plaintiff writes: "The

plaintiff, Alvin Wilson, whos handicap 51-year-old, filed the operative amend complaint with this court on 4-28-2014 add a American with disabilities act, ("A.D.A.") the fact that it provides that a claims that plaintiff bring these claims in defendants official capacity for money damages, how, ever, these claims includes claims pursuant to the A.D.A." Proposed Am. Compl. at 4. Even assuming that the disability about which plaintiff complains arises from the injuries alleged in this lawsuit, an ADA claim is an entirely separate cause of action, requiring different factual evidence, and presumably involving different defendants, and are thus unrelated to the claims asserted in this action.  To the extent that he now wishes to assert a proper ADA claim, he may do so in a new lawsuit.  Further, leave to amend a complaint should not be granted where amendment would be futile, as it would be here because plaintiff has failed to plead that he is disabled under the ADA. *See* Fed. R. Civ. P. 15(a)(2); *see also Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"). Plaintiff's motion to amend is denied.

<u>CONCLUSION</u>

The defendant's motion to dismiss is granted in part and denied in part for the reasons described above.  Further, certain of plaintiff's claims are dismissed on initial review pursuant to 28 U.S.C. § 1915A. The only claim remaining before the court is plaintiff's claim of deliberate indifference to a serious medical need

against defendant McKenna. All other claims are dismissed, and the Clerk is ordered to terminate from the docket all defendants except defendant McKenna. The Clerk is directed to change defendant McKenna's name on the docket so that defendant is identified as "Brooke McKenna" on the docket.

The plaintiff's motion to once again amend his complaint is denied without prejudice to the plaintiff pursuing an ADA claim in a separate action.

Finally, pursuant to the IRO, all motions for summary judgment were due April 28, 2014.  Although that date has long passed, because the plaintiff was allowed to file an amended complaint, the court will extend the summary judgment deadline to thirty-five (35) days from the date of this opinion.  The parties' summary judgment briefs are due on or before May 5, 2015.  If no summary judgment motions are filed, the parties' Joint Trial Memorandum will be due July 13, 2015, and jury selection will take place August 17, 2015. If either party files a motion for summary judgment, the parties' Joint Trial Memorandum will be due November 2, 2015, and jury selection will take place December 1, 2015. The parties' Joint Trial Memorandum must conform strictly to the court's standing Joint Trial Memorandum Order that is available on the court's website and will be uploaded to the docket. The Clerk is also directed to send a copy of the Joint Trial Memorandum Order to plaintiff along with this opinion.

SO ORDERED at Hartford, Connecticut this 31st day of March, 2015.


_____/s/_____
Vanessa L. Bryant
United States District Judge

31